**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Philip A. Brimmer**

Civil Case No.  08-cv-02399-PAB-KMT

ANITA LUSTER,

      Plaintiff,

v.

TOM VILSACK,
Secretary, United States Department of Agriculture,

      Defendant.
_____

**ORDER GRANTING SUMMARY JUDGMENT**
_____

This matter is before the Court on the motion for summary judgment [Docket No. 42] filed by defendant Tom Vilsack, the Secretary of the United States Department of Agriculture.  Defendant seeks dismissal of plaintiff's claims against him for not promoting her based on gender, disparate treatment based on gender, and retaliation, as well as improper disclosure and failure to establish safeguards under the Privacy Act.  The summary judgment motion is fully briefed and ripe for disposition.

**I.  BACKGROUND**[1]

Plaintiff Anita Luster has worked with the United States Forest Service ("Forest Service") in various positions since the 1990s.  In 2001, plaintiff took a position as a full-time Visitor Information Specialist ("VIS") and was a GS-5 salary grade employee.  Despite her VIS position, plaintiff also worked in various temporary positions at GS-6

_____

[1] Unless otherwise indicated, the following facts are not in dispute.

levels throughout the years.  For example, in the summer of 2005, plaintiff worked on a temporary work assignment in Leadville during which her pay was increased to the GS-6 level.  At some point before 2004, plaintiff applied for a promotion to a GS-6 Wilderness Guard position, but the District Ranger Paul Crespin recommended a male for the position.  In 2004, plaintiff sought informal EEO Counseling in connection with an informal complaint, but does not recall what behavior she complained about. Plaintiff later withdrew this complaint.  In the spring of 2004, a Forestry Technician position became open in La Veta, Colorado.  During the time the La Veta office was vacant, the Forest Service assigned plaintiff a month-long rotation working out of that office.

In the fall of 2005, plaintiff applied for the Forestry Technician position in La Veta.  The advertisement for the position invited applicants to fill the job at the GS-7, GS-8, or GS-9 level.  Plaintiff applied for the position at the GS-7 level only.  The Forest Service officials in charge of determining who would fill the Forestry Technician position were Paul Crespin, the District Ranger, and Robert Leaverton, the Forest Supervisor. Mr. Crespin also asked Carl Bauer to assist in creating an evaluation panel to recommend applicants for the position.  Mr. Bauer was going to be supervisor of the new Forest Technician and also served as a Special Emphasis Coordinator for the Forest Service.  In processing candidates for the open position, the Forest Service used its human resources computer program, named Avue Digital Services ("Avue").  Avue analyzes candidates' responses to multiple choice questions asked in job applications. It then automatically rates applicants and generates "referral lists" of candidates.

The Forest Service issued an annual Affirmative Employment Program report for

2

Minorities and Women for 2002 and 2003.  The 2003 report listed an "ongoing" action item directing Forest Service supervisors to "continue to restructure positions across a number of operating level positions to lower levels . . . to improve career entry and advancement opportunities for lower grade employees."  Docket No. 43 ("Pl.'s Resp."), Ex. R at 2.  Mr. Bauer was aware that statistics generally indicated a lack of women working at the Forest Service and that one of his duties as Special Emphasis Coordinator was to attract minorities to the Forest Service.  The Forest Service's 2006 Annual EEO Program Status Report stated that, in 2005, women represented 46.8% of the civilian labor force but only 38.3% of the Forest Service workforce and that, in the same year, women represented 57.8% of the civilian workforce in technician positions but only 23.6% of the Forest Service technician workforce.  One of plaintiff's supervisors reported that the number of women employed in the Pike and San Isabel National Forest, where plaintiff worked, is 33-36% below the number in the civilian workforce.

When evaluating applicants for the open Forest Technician position in the fall of 2005, Mr. Bauer received referral lists for GS-7, GS-8, and GS-9 candidates, but only looked at  the applicants on the GS-8 and GS-9 referral lists in considering whom to select.  Mr. Bauer claims he looked at the GS-8 and GS-9 lists because he wanted to fill the position with a more experienced candidate.  Plaintiff's name only appeared on the competitive[2] GS-7 referral list.  As a result, she was not among the group of employees

---

[2]  Avue generally classifies candidates as "competitive" if they were currently employed at a lower GS-level than the open position and "noncompetitive" if they were employed at the same or higher GS-level as the open position.

that the Forest Service considered for the La Veta position.

The noncompetitive GS-7 and competitive GS-8 referral lists included Jeffrey Wingate's name, the candidate ultimately chosen for the position.  On the GS-7 referral list generated by Avue a notation was written by Mr. Wingate's name reading "DO NOT CONSIDER. Qualified but not a quality candidate."

Using the referral lists, Mr. Bauer selected a subset of the GS-8 and GS-9 level applications for the evaluation panel to review.  Mr. Bauer and the other members of the panel do not recall seeing the "DO NOT CONSIDER" comment by Mr. Wingate's name on the GS-7 list during the review process.  Mr. Crespin also claims not to have seen it.  Mr. Wingate knew two members of the panel, and those members provided their personal observations about Mr. Wingate to Mr. Bauer.  The panel agreed that Vicki Gullag-Harris, John Halverson, and Jeffrey Wingate were the top candidates on the GS-8 and GS-9 lists.  Mr. Bauer interviewed the finalists.  The day after the interviews, Ms. Gullag-Harris requested that her name be withdrawn from consideration. Mr. Crespin later claimed Ms. Gullag-Harris was his preferred choice for the position until she withdrew.   After Ms. Gullag-Harris' withdrawal, Mr. Bauer recommended Mr. Wingate for the position to Mr. Crespin.  Mr. Bauer stated at the time that his recommendation was based on Mr. Wingate's awareness of the importance of the Forest Service's relationships with local communities and his experience dealing with local community governments and resource programs.  Mr. Crespin in turn recommended Mr. Wingate to Mr. Leaverton, who selected Mr. Wingate for the position.  Mr. Leaverton also does not recall seeing the "DO NOT CONSIDER" notation by Mr. Wingate's name during the process.  On March 1, 2006, Mr. Crespin announced

4

that Mr. Wingate had been selected for the position.

On March 22, 2006, plaintiff contacted the EEO Counselor about what she perceived to be discrimination in the selection of Mr. Wingate.  The EEO counselor called Mr. Crespin on April 18, 2006 to discuss plaintiff's complaint.  In May 2006, at Mr. Crespin's direction, plaintiff was moved from the front desk to a cubicle in the back of the office.  Her hours were changed from five days a week, eight hours a day to four days a week, ten hours a day.  During this time, plaintiff asked Mr. Crespin for a GS-6 promotion, which Mr. Crespin denied.  During the summer of 2006, plaintiff took on field duties which included participating in an Owl Survey and working on a National Visitor Use Monitoring Survey.

In May 2006, plaintiff filed a formal EEO complaint.  In dealing with plaintiff's claim at the administrative level, agency counsel Daniel Rosenbluth faxed Mr. Crespin various confidential documents related to plaintiff's case.  Plaintiff claims that Mr. Rosenbluth faxed these documents to unsecured fax machines, often without proper cover sheets, and that many Forest Service employees could have accessed her confidential documents as a result.  Defendant disputes this claim and asserts that Mr. Rosenbluth always placed the proper cover sheets on his faxes.  Additionally, the parties agree that Mr. Crespin delivered a notice of hearing dates in plaintiff's administrative case to two Forest Service employees designated as witnesses – Chris Cloninger and Monica White.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  DISCUSSION

Plaintiff's complaint contains three claims for discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, and two claims for violations of the Privacy Act.  Plaintiff's discrimination claims include: (1) non-selection based on sex; (2) disparate treatment based on sex; and (3) retaliation.  Plaintiff's claims for violation of the Privacy Act, 5 U.S.C. § 552a, include: (1) improper disclosure; and (2) failure to establish safeguards.

### A.  Non-Selection Based on Sex

The parties agree that the traditional three-step *McDonnell Douglas* burden-shifting analysis applies to all of plaintiff's discrimination claims.  On plaintiff's first claim,

6

she bears the initial burden of establishing a prima facie by showing: (1) that she

belongs to a protected class; (2) she was qualified for the position; (3) that she was not

selected for the position; and (4) that a person of similar qualifications who was not a

member of the protected class was selected.  *Stahl v. Board of Cnty Comm'rs of the*

*Unified Gov't of Wyandotte Cnty*, 101 F. App'x 316, 320 (10th Cir. 2004).   If plaintiff

meets that burden, the burden shifts to defendant to articulate a legitimate,

nondiscriminatory reason for its employment decision.  If the employer meets this

burden, "summary judgment is warranted unless the employee can show there is a

genuine issue of material fact as to whether the proffered reasons are pretextual" so as

to allow an inference that the employer did not act for the offered nondiscriminatory

reasons.  *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citing *Jones v. Denver*

*Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000)).

　　　Defendant admits that plaintiff has established a prima facie case of

discrimination as to her non-selection.  Def.'s Mot. For Summ. J. ("Def.'s Mot.") at 12.

Defendant argues, however, that the Forest Service had two legitimate,

nondiscriminatory reasons for its selection of Mr. Wingate.  First, based on the

recommendation of Mr. Crespin, Mr. Leaverton believed Mr. Wingate was the most

qualified candidate.  Second, the Forest Service officials involved in Mr. Wingate's

selection only considered candidates on the GS-8 and GS-9 referral lists because they

believed those candidates were best suited to the needs of the position.  *See id.*  The

Court finds these are legitimate non-discriminatory reasons for hiring Mr. Wingate.

Whether defendant is entitled to summary judgment on plaintiff's first claim, therefore,

hinges on whether plaintiff has shown that there is a genuine issue of material fact on

the issue of pretext.

A showing of pretext is generally based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." *Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1143 (10th Cir. 2009) (quoting *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007)).  The Tenth Circuit has explained that a plaintiff is not required to show pretext with any particular evidence and may prove pretext using a "variety of different" means, but that "[a] plaintiff typically makes a showing of pretext in one of three ways." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).  A plaintiff may present: (1) "evidence that the defendant's stated reason for the adverse employment action was false"; (2) "evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances"; or (3) "evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff." *Id.* (citations omitted).  "As a general rule, an employee must proffer evidence that shows each of the employer's justifications is pretextual." *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1126 (10th Cir. 2005).

Defendant's motion and plaintiff's response isolate various pieces of evidence plaintiff cites in order to demonstrate that defendant's proffered reasons for not selecting her for the Forestry Technician position were pretextual.  However, the inquiry on summary judgment is whether a jury could determine that defendant's proffered

8

reasons are pretextual in the context of the totality of the circumstances. *Bradley v. Denver Health & Hosp. Auth.*, No. 08-cv-02587-PAB-KMT, 2010 WL 3341508 at *17 (D. Colo. Aug. 24, 2010) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)).  Therefore, the Court will examine whether the evidence plaintiff has introduced as a whole is sufficient to allow a rational jury to conclude that each of defendant's articulated justifications is not worthy of credence.

No rational jury could find that defendant's decision to only consider GS-8 and GS-9 level applicants was pretextual.  Plaintiff cites evidence that in 2003 the Forest Service issued an Affirmative Employment Program for Minorities and Women plan which included an "action item" of continuing to "restructure positions across a number of operating level positions to lower levels . . . to improve career entry and advancement opportunities for lower grade employees,"  Pl.'s Resp., Ex. R at 2. Nothing plaintiff cites, however, suggests that this program required Mr. Crespin and Mr. Bauer to consider the GS-7 applicants to fill the La Veta position or that they failed to do so out of discriminatory intent, whether towards women generally or towards Ms. Luster specifically.  Mr. Bauer claims that he considered applicants from the GS-8 and GS-9 lists because he believed these candidates could "hit the ground running and not require a lot of supervision," Def.'s Mot., Ex. 5 at ¶ 5, and nothing plaintiff cites suggests that these reasons are not credible.

Moreover, plaintiff's continued reference to the statistical disparities at the Forest Service cannot, by themselves, establish pretext because they do not eliminate nondiscriminatory explanations for her non-promotion.  *See Turner*, 563 F.3d at 1146-48.  These general disparities do nothing to discredit the specific nondiscriminatory

9

explanation given by defendant – that plaintiff was never considered for the position because her name only appeared on the GS-7 list.

Further, neither these statistics nor plaintiff's other evidence suggest that the decision not to consider the applicants on the GS-7 list was in any way motivated by gender discrimination.  For example, plaintiff does not present evidence that there were more female applicants on the GS-7 list as compared to the GS-8 or GS-9 lists, thus giving rise to a discriminatory motive to exclude GS-7 applicants.  Nor does her evidence account for the fact that another female applicant was selected as a finalist for the La Veta position.  *See id.* at 1147.  Ultimately, plaintiff provides no facts showing she was ever considered for the position or that the decision not to consider her was related to her gender.

Plaintiff must present evidence showing both of defendant's nondiscriminatory justifications were pretextual.  *Bryant,* 432 F.3d at 1126.  The Court need not consider plaintiff's arguments regarding defendant's first justification (Mr. Leaverton believed Mr. Wingate was the most qualified) because plaintiff's evidence is insufficient to create an inference of pretext as to defendant's second justification.  Defendant is entitled to summary judgment on plaintiff's first claim.

B.  Disparate Treatment Based on Sex

In order to make out a prima facie case of disparate treatment, plaintiff must show three elements: (1) that plaintiff belonged to a protected class; (2) that she suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Hysten v. Burlington Northern & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

Defendant argues that he is entitled to summary judgment on this claim both because plaintiff cannot meet the second or third elements of a prima facie case and because defendant had legitimate, nondiscriminatory reasons for any changes in the terms of plaintiff's employment which plaintiff cannot establish were pretextual.  Because the Court finds that plaintiff has failed to make out a prima facie case of disparate treatment, it need not consider the parties' arguments as to nondiscriminatory justification or pretext.

Assuming that the changes in plaintiff's employment in the spring and summer of 2006 - including the denial of her temporary promotion, her assignment to field duties, and her relocation from the front desk to a back office cubicle - were "adverse employment actions," plaintiff does not cite sufficient evidence that these adverse actions occurred under circumstances giving rise to an inference of discrimination.  *See Hysten,* 296 F.3d at 1181.  Responding to defendant's motion, the only evidence plaintiff cites to suggest that Mr. Crespin took these employment actions against plaintiff because of her gender are statistics as to the general gender disparity at the Forest Service and Mr. Crespin's earlier advice to plaintiff to take a desk job "to get her foot in the door."  Pl.'s Resp. at 15.  Viewing this evidence in the light most favorable to plaintiff, no reasonable jury could infer that Mr. Crespin was motivated by gender bias when he made any of his decisions as to plaintiff's work conditions in the spring and summer of 2006.  Therefore, plaintiff cannot make out a prima facie case of disparate treatment and defendant is entitled to summary judgment on plaintiff's second claim.  *See Hysten,* 296 F.3d at 1181.

C.  Retaliation

To establish a prima facie case of retaliation, plaintiff must show: "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1215 (10th Cir. 2010) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007)).  Plaintiff argues she suffered retaliation on two separate occasions for two separate protected activities.  First, plaintiff claims that the Forest Service's decision not select her for the Forest Technician position was in retaliation for her contact with the EEO counselor in 2004.  Second, plaintiff claims that Mr. Crespin's decision to change the conditions of her employment in the spring and summer of 2006 was retaliation for her May 2006 EEO complaint related to her non-selection.

As to her first retaliation claim, plaintiff cites no evidence showing that the individuals involved in selecting Mr. Wingate for the Forestry Technician position were aware of her 2004 informal EEO complaint.  *See* Def.'s Mot at 9, Defendant Fact 69; Pl.'s Resp. at 3.  Plaintiff, therefore, cannot show any causal connection between her protected activity in 2004 and her non-selection in 2006 and cannot make out a prima facie case of retaliation as to this incident.  *See Johnson*, 594 F.3d at 1216.

As for the second claim of retaliation, the causal link between the protected conduct and the supposed adverse actions is more clear.  Therefore, the Court must first consider whether plaintiff has cited sufficient evidence to show an actual adverse employment action so as to satisfy the second element of her prima facie case.  An

12

"adverse" action "'is not limited to discriminatory actions that affect the terms and conditions of employment'"; however, the plaintiff "'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).  The Tenth Circuit construes "adverse employment action" liberally, but mere inconveniences or alterations of job responsibilities are insufficient.  *Id.* (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004)).

Plaintiff references two changes in her employment conditions during this period that could arguably be construed as adverse employment actions.  First, in the early months of 2006, Mr. Crespin began arranging for plaintiff to perform duties outside of her permanent VIS job, which included the field duties she took on in the spring and summer of 2006.  Second, in May of 2006, plaintiff was moved from the front desk to a cubicle at the back of her office.  Although the Court finds that no rational jury could find that plaintiff's change in desk location was an adverse employment action as opposed to an inconvenience, *see Reinhardt,* 595 F.3d at 1133, a jury might reasonably conclude that Mr. Crespin's assignment of plaintiff to field duties was a significant enough change in her responsibilities to constitute an adverse employment action.  *See Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (adverse employment action may include "reassignment with significantly different responsibilities") (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004)).

Nonetheless, plaintiff cites no evidence suggesting a causal nexus between Mr. Crespin's decision to assign her to field duties and her contact with the EEO counselor. Plaintiff initially contacted the EEO counselor about her non-selection on March 22, 2006, Pl.'s Resp., Ex. I, and the counselor first spoke to Mr. Crespin about plaintiff's concerns on April 18, 2006. However, nothing contradicts Mr. Crespin's account that he made the decision to assign plaintiff to field duties within a few days of February 23, 2006, well before the EEO counselor spoke to him on April 18 about plaintiff's complaints.[3] Additionally, plaintiff stated in her deposition that Mr. Crespin informed her of her new duties in March. Def.'s Mot., Ex. 3 at 94-95. Thus, there is no causal connection between plaintiff's protected activity and Mr. Crespin's decision to assign her field duties. Plaintiff, therefore, cannot make out a prima facie case of retaliation on any of her adverse employment actions she claims to have suffered and defendant is entitled to summary judgment on her retaliation claim. *See Johnson*, 594 F.3d at 1216.

_____

[3] It is undisputed that plaintiff spent the summer of 2005 working at a temporary position in Leadville, away from her permanent VIS job. Defendant presents evidence, in the form of Mr. Crespin's sworn declaration, that Mr. Crespin anticipated plaintiff would spend the summer of 2006 in Leadville as well, but that on February 23, 2006 plaintiff advised him she would not be returning to Leadville. Def.'s Mot., Ex. 1 ¶¶ 19, 23. As a result of plaintiff's decision, Mr. Crespin had to find new duties for plaintiff to perform in the summer of 2006 and determined that plaintiff could take on various field duties. Def.'s Mot., Ex. 1 ¶¶ 24-26. Plaintiff denies defendant's facts on these points, but does not provide any contrary evidence or demonstrate that defendant's narrative is unsupported. *See* Pl.'s Resp. at 3. Plaintiff admits that on February 23, 2006 she advised Mr. Crespin that, in order to return to Leadville for the summer of 2006, she would need a temporary promotion to GS-7. *See id.* An affidavit from Mr. Crespin provided by plaintiff explains that the Leadville District Ranger could not provide a GS-7 promotion for plaintiff and plaintiff therefore decided not to return to the position. Pl.'s Resp. Ex. J at 9-10. No evidence cited by plaintiff suggests that the decisions regarding where plaintiff would work and what her duties would be were not made in the last few days of February, 2006, well before Mr. Crespin spoke with the EEO counselor about plaintiff's protected activity.

D.  Improper Disclosure

Plaintiff's fourth claim for relief alleges that defendant improperly disclosed her confidential information in violation of the Privacy Act, 5 U.S.C. § 552a(b).  To prevail on her claim for improper disclosure under the Privacy Act, plaintiff must prove four elements: "(1) the information is a record within a system of records, (2)  the agency disclosed the information, (3) the disclosure adversely affected the plaintiff, and (4) the disclosure was willful or intentional."  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010) (citing *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184 (5th Cir. 2007)).  However, "certain disclosures are authorized and do not give rise to a Privacy Act claim."  *Id.* (citing 5 C.F.R. § 297.401 (1996)).  Authorized disclosures include transmission of a private record to employees who have "a need for the information in the performance of their duties."  5 C.F.R. § 297.401(a).

Setting aside the first and third elements, the Court finds there is no genuine issue of fact as to whether there was a "disclosure" to an unintended recipient or whether anyone at the Forest Service "willfully and intentionally" disclosed plaintiff's private records.  Plaintiff argues that files pertaining to her EEO complaint and administrative case were disclosed in two ways: first, Forest Service agency counsel Daniel Rosenbluth disclosed documents by faxing them to unsecured fax machines without cover sheets; and second, Mr. Rosenbluth made actual disclosures of documents and information to other Forest Service employees.  *See* Pl.'s Resp. 9-10; 17-19; Def.'s Mot. at 18.

The first of these "disclosures" was not a "disclosure" under the meaning of the Privacy Act.  The Tenth Circuit has defined "disclosure" under the Act to mean

15

"providing personal review of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative." *Pippinger v. Rubin*, 129 F.3d 519, 528 (10th Cir. 1997) (quoting 5 C.F.R. § 297.102).  The Tenth Circuit has also interpreted "disclose" liberally to include the "disclosure of information directly or indirectly derived from an agency system of records, even where the physical records are not disclosed." *Id.*  However, disclosure requires that the record actually be transmitted to an individual, as the Privacy Act itself only prohibits the agency from disclosing a record "by any means of *communication to any person, or to another agency*. . . ." 5 U.S.C. § 552a(b) (emphasis added).  Plaintiff has presented no evidence that any individuals, other than the intended recipient, Mr. Crespin, read the records Mr. Rosenbluth sent by fax.[4]  And plaintiff has provided no authority to suggest that the *possibility* that a record might be revealed to unauthorized readers by negligent or reckless transmission is sufficient to constitute a prohibited disclosure under the Act; thus, Mr. Rosenbluth's method of faxing the records is not actionable under the Privacy Act.

As for Mr. Rosenbluth's actual disclosures, plaintiff argues Mr. Rosenbluth disclosed confidential documents to Mr. Crespin and, additionally, notified Forest Service employees Chris Cloninger and Monica White of the hearing dates for plaintiff's administrative case.  Plaintiff does not raise a genuine issue of fact as to whether these

---

[4] Defendant presented evidence that Forest Service employee Chris Cloninger found faxes addressed to Mr. Crespin that mentioned plaintiff's case, but Ms. Cloninger also admitted that these faxes had cover sheets on them and that she did not see anything besides the cover sheets. *See* Def.'s Mot., Ex. 10.  Plaintiff points to no evidence that her records were seen by anyone besides Mr. Crespin after Mr. Rosenbluth faxed them.

disclosures were "willful and intentional."  *See Wilkerson v. Shinseki*, 606 F.3d at 1268.

A disclosure is willful or intentional when it is "so patently egregious and unlawful that

anyone undertaking the conduct should have known it [was] unlawful, or conduct

committed without grounds for believing it to be lawful or action flagrantly disregarding

others' rights under the Act."  *Pippinger*, 129 F.3d at 530 (quoting *Andrews v. Veterans

Admin.*, 838 F.2d 418, 425 (10th Cir. 1988)).  In *Pippinger*, the Tenth Circuit held that a

disclosure cannot be wilful or intentional where the disclosing official "had ample reason

to believe that [the disclosure] was lawful . . . ."  *Id.*

Mr. Rosenbluth disclosed documents about plaintiff's complaint to Mr. Crespin,

the individual directly named in the complaint, and plaintiff does not contest the fact that

Mr. Rosenbluth reasonably believed that he had to keep Mr. Crespin informed of the

status of the matter because Mr. Crespin was his client.  *See* Def.'s Mot at 18; Pl.'s

Resp. at 19 n.12.  Mr. Rosenbluth also had Mr. Crespin deliver a document styled as an

"Order" from Mr. Rosenbluth to Ms. White and Ms. Cloninger, notifying the women of

the hearing dates for plaintiff's EEOC hearings.  Def.'s Mot. at 10; Pl.'s Resp. at 3.

Both Ms. White and Ms. Cloninger were designated as witnesses in plaintiff's

administrative EEOC hearing, and the EEOC Administrative Judge ordered the Forest

Service to notify all witnesses of the hearing dates.  Def.'s Mot. at 10.  Plaintiff does not

present facts which suggest that Mr. Rosenbluth had reason to think that these

disclosures were unlawful; rather, the facts indicate Mr. Rosenbluth believed he was

acting in good faith as counsel for the agency in responding to plaintiff's complaint.

Thus, plaintiff has not raised a material issue of fact as to whether these disclosures

were "intentional or willful" as required by the Tenth Circuit, s*ee Andrews v. Veterans Admin.*, 838 F.2d at 425, and therefore cannot show any of the alleged disclosures violated the Privacy Act.  The defendant is entitled to summary judgment on the plaintiff's fourth claim for relief.

E.  Failure to Establish Safeguards

Plaintiff's final claim asserts that the Forest Service failed to establish adequate procedures to safeguard her confidential information in violation of the Privacy Act, 5 U.S.C. § 552a(e)(10), which requires that each agency which maintains a system of records "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."  To prevail on this claim, plaintiff must show that (1) the Forest Service failed to establish appropriate safeguards; (2) the agency's failure was intentional or willful; (3) that the failure caused adverse effects; and (4) the plaintiff suffered actual damages.  *See* 5 U.S.C. § 552a(e)(10); *Thompson v. Dept. of State*, 400 F. Supp. 2d 1, 8 (D.D.C. 2005) (discussing elements of causes of action under Privacy Act's residual clause, § 552a(g)(1)(D)).

Plaintiff cannot show that any alleged failure to establish safeguards was "willful or intentional," as required by the Act.  *See* 5 U.S.C. § 552a(g).  In order to meet this element, plaintiff must convince the jury that defendant's failure "amounted to a reckless disregard of plaintiff's rights."  *See Thompson*, 400 F. Supp. 2d at 23.  Mr. Rosenbluth reasonably believed the faxes would reach their intended recipient, Mr.

18

Crespin, and he took reasonable steps to ensure that they did.  *See* Pl.'s Resp., Ex. Z at 83, 88-93.  Mr. Rosenbluth was not aware of how many Forest Service employees had access to the fax machine at Mr. Crespin's office, *see id.* at 89, nor does plaintiff present any evidence that he had reason to think "curious co-workers would invade [plaintiff's] privacy by perusing documents that were clearly meant for" Mr. Crespin alone.  *See Thompson*, 400 F. Supp. 2d at 23.  Moreover, plaintiff cites no evidence demonstrating that Mr. Rosenbluth's failure to establish safeguards caused any "adverse effects" as required by the statute.  *See Thompson*, 400 F. Supp. 2d at 8. Defendant is therefore entitled to summary judgment on plaintiff's fifth claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED that the motion for summary judgment [Docket No. 42] filed by defendant is GRANTED.  Judgment shall enter in favor of defendant and against plaintiff.  It is further

ORDERED that all other pending motions are denied as moot.

DATED December 6, 2010.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge